UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE DIMASI,<br><br>            Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>            Defendant. | Case No. CV 14-7992-JPR<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING COMMISSIONER** |

**I.   PROCEEDINGS**

    Plaintiff seeks review of the Commissioner's final decision denying her application for supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed June 26, 2015, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed.

**II. BACKGROUND**

Plaintiff was born in 1964. (Administrative Record ("AR") 175.) She completed high school and worked as a house cleaner. (AR 194.)

On July 25, 2012, Plaintiff filed an application for SSI (AR 189), alleging that she had been unable to work since December 1, 2010, because of obsessive-compulsive disorder, anxiety, asthma, "social phobia," emphysema, and chronic obstructive pulmonary disease (AR 193). After her application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge. (AR 126.) A hearing was held on December 23, 2013, at which Plaintiff, who was represented by counsel, testified, as did both a medical and a vocational expert ("VE"). (AR 61-81.) In a written decision issued February 10, 2014, the ALJ found Plaintiff not disabled. (AR 22-36.) On August 12, 2014, the Appeals Council denied Plaintiff's request for review. (AR 1.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance.

Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine

whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and her claim must be denied.  § 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, she is not disabled and the claim must be denied.  § 416.920(a)(4)(iv).  The claimant has the burden of proving she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. § 416.920(a)(4)(v); Drouin, 966 F.2d at 1257.  That determination

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1 comprises the fifth and final step in the sequential analysis.
2 § 416.920(a)(4)(v); <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d
3 at 1257.

      B.    <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 25, 2012, her application date. (AR 24.) At step two, he concluded that Plaintiff had severe impairments of COPD, asthma, hypertension, "substance addiction (speed/methamphetamine)," and "substance addiction (Xanax)."[2] (<u>Id.</u>) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listing. (AR 25.) At step four, he found that Plaintiff had the RFC to perform light work with additional restrictions. (AR 27.) Her additional physical restrictions were that she could stand, walk, and sit six hours in an eight-hour workday; and occasionally do postural activities but not those involving ladders, ropes, or scaffolds. (<u>Id.</u>) Her additional nonexertional restrictions were that she was precluded from working at unprotected heights or in "environments with excessive air pollution" or "temperature extremes." (<u>Id.</u>) She was also limited to "minimum public contact" and could occasionally work around coworkers. (<u>Id.</u>) Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work as a house cleaner. (AR 34.) At step five, the ALJ found that Plaintiff could perform

---

[2] Xanax is used to treat anxiety disorders and panic attacks. <u>See</u> <u>Alprazolam</u>, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a684001.html (last revised Nov. 1, 2010).

5

jobs existing in significant numbers in the national economy. (AR 35.) Accordingly, he found her not disabled. (Id.)

## V. DISCUSSION

### A. Any Error in the ALJ's Hypothetical to the VE Was Harmless

Plaintiff contends that the ALJ erred in relying on the VE's testimony because his hypothetical question to the VE presented a limitation on coworker contact of "at least occasionally, between occasionally and frequently" instead of "occasional," which was what he ultimately found in his RFC determination. (J. Stip at 6-7.) For the reasons discussed below, remand is not warranted.

#### 1. Applicable law

At step five of the five-step process, the Commissioner has the burden to demonstrate that the claimant can perform some work that exists in "significant numbers" in the national or regional economy, taking into account the claimant's RFC, age, education, and work experience. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.960(c). The Commissioner may satisfy that burden either through the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. part 404, subpart P, appendix 2. Tackett, 180 F.3d at 1100-01.

The ALJ should ask the VE a hypothetical question "reflecting all the claimant's limitations, both physical and mental, supported by the record." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012). The ALJ may properly rely on the VE's testimony in response to the hypothetical in determining the claimant's RFC. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th

Cir. 2005). If, however, the hypothetical does not reflect all the claimant's limitations, "then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Hill, 698 F.3d at 1162 (citing Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993)).

### 2. Relevant background

The ALJ first presented to the VE a hypothetical person of Plaintiff's "education, training, and work history" with the following limitations:

> [S]he can lift no more than 20 pounds, and she can only do that occasionally. She can lift 10 pounds frequently. She can stand and walk for six hours. She can sit for six hours. The posturals, all of them are limited to occasional, with the exception of ladders, ropes, and scaffolding, which is totally precluded, as is unprotected heights. And she's also precluded from working in environments with excessive air pollution, like dust, fumes, gasses. And she's precluded from working in temperature extremes, either extreme hot or extreme cold.

(AR 77.) The VE testified that such a person would not be able to perform Plaintiff's past relevant work, but she would be able to perform the light, unskilled jobs of office helper, DOT 239.567-010, 1991 WL 672232; mail clerk, DOT 209.687-026, 1991 WL 671813; and information clerk, DOT 237.367-018, 1991 WL 672187. (AR 78.)

The ALJ then presented a second hypothetical person, with all the limitations of the first plus "minimum public contacts,"

meaning that she "cannot work around lots of people" but "can work around coworkers at least occasionally, between occasionally and frequently." (AR 79.)  The VE testified that such a person would still be able to perform the jobs of office helper and mail clerk but not information clerk because "[t]hat would be frequent to constant public contact." (Id.)

### 3. Analysis

As Plaintiff correctly notes, the ALJ's second hypothetical to the VE stated that the person could work around coworkers "at least occasionally, between occasionally and frequently" (AR 79), which was different from the ALJ's RFC determination that Plaintiff could only "occasionally" work around coworkers (AR 27).  See SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983) ("occasionally" means "occurring from very little up to one-third of the time" and "frequent" means "occurring from one-third to two-thirds of the time").  Any error arising from the discrepancy, however, was harmless because it was "inconsequential to the ultimate nondisability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

The DOT's descriptions indicate that in both the office-helper and mail-clerk jobs, dealing with people is "not significant."  DOT 239.567-010, 1991 WL 672232 (indicating that office-helper job involves speaking with or signaling to people but "Not Significant[ly]"); DOT 209.687-026, 1991 WL 671813 (indicating that mail-clerk job involves taking instructions or helping people but "Not Significant[ly]"); see also DOT app. B –

8

1  Explanation of Data, People, and Things, 1991 WL 688701 (DOT's
2  "Worker Function" codes state how worker functions in listed job
3  with respect to "Data," "People," and "Things").  Moreover, the
4  DOT descriptions indicate that talking is "[o]ccasionally"
5  present as an office helper and "not present" as a mail clerk.
6  DOT 239.567-010, 1991 WL 672232; DOT 209.687-026, 1991 WL 671813.
7  The DOT also states that the office-helper and mail-clerk jobs
8  are unskilled, which indicates limited contact with people.  See
9  20 C.F.R. pt. 404, subpt. P, app. 2 § 202.00(g) ("the primary
10 work functions in the bulk of unskilled work relate to working
11 with things (rather than with data or people)"); SSR 85–15, 1985
12 WL 56857, at *4 (Jan. 1, 1985) (unskilled jobs "ordinarily
13 involve dealing primarily with objects, rather than with data or
14 people").

15     Because the office-helper and mail-clerk jobs both involve
16 an insignificant amount of interaction with people, the ALJ would
17 still have found Plaintiff capable of performing them if he had
18 presented an occasional rather than occasional-to-frequent
19 limitation on coworker contact in his second hypothetical to the
20 VE.  Indeed, the VE testified that the reason the additional
21 limitations in the second hypothetical eliminated the
22 information-clerk job was not because it required a greater
23 degree of coworker contact but rather a greater degree of public
24 contact.  (AR 79 (testifying that "[o]f the three," information-
25 clerk job would not "fit" because "[t]hat would be frequent to
26 constant public contact").)  Thus, any error in the difference
27 between the ALJ's hypothetical to the VE and his RFC
28 determination was inconsequential to the ultimate finding of

nondisability and therefore harmless.[3]  See Molina, 674 F.3d at 1115; Stout, 454 F.3d at 1055.

Plaintiff is not entitled to remand on this ground.

B.  <u>The ALJ Properly Assessed the Medical Findings and Opinions</u>

Plaintiff contends that the ALJ erred in assessing the findings and opinions of medical sources concerning her mental health.  (J. Stip. at 8-9, 11.)  She also claims that the ALJ failed to develop the record by not ordering a psychiatric consultative examination or having a psychiatrist or psychologist testify as a medical expert at the hearing.  (See id. at 9-11.)  For the reasons discussed below, remand is not warranted.

1.  <u>Applicable law</u>

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither.  Lester, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is

---

[3] For the same reason, the ALJ's failure under Social Security Ruling 00-4p to ask the VE whether his testimony was consistent with the DOT was also harmless.  See Massachi v. Astrue, 486 F.3d 1149, 1152-54 & n.19 (9th Cir. 2007) (ALJ has duty under SSR 00-4p to ask VE about "any possible conflict" between VE's testimony and DOT, but failure to do so is harmless when no conflict exists or VE provided "sufficient support" for conclusion "so as to justify any potential conflicts"); Stiller v. Colvin, No. CV 12-9321 RNB, 2013 WL 3878950, at *5 (C.D. Cal. July 26, 2013) (ALJ's failure to ask VE whether testimony conflicted with DOT was harmless because limitation to no public contact was not inconsistent with DOT's description that dealing with people was "not significant" part of job).

1  generally entitled to more weight than that of a nonexamining
2  physician.  Id.
3      An opinion from a nonacceptable medical source, however, may
4  be rejected for "germane" reasons.  Molina, 674 F.3d at 1111; see
5  also § 416.913(a) ("[a]cceptable medical sources" include only
6  licensed physicians, psychologists, optometrists, podiatrists,
7  and speech pathologists).
8          2.   Relevant background
9      On June 4, 2012, Margaret Duenez, a licensed clinical social
10 worker, performed an initial psychiatric evaluation of Plaintiff.
11 (AR 406-12.)  At Axis I she assessed "Sedative, Hypnotic or
12 Anxiolytic Depend[ence]" and OCD.  (AR 406; see also AR 413.)  At
13 Axis IV she noted that Plaintiff tends to "isolate [a]nd
14 withdraw."  (AR 406.)  Duenez concluded, "Client meets medical
15 necessity for mental health services as evidenced by social
16 withdrawal and isolation, homelessness and the inability to
17 sustain employment due to symptoms."  (AR 407.)  She referred
18 Plaintiff to La Puente Valley Mental Health Center for treatment.
19 (AR 413.)
20     The ALJ gave "little" weight to Duenez's opinion that
21 Plaintiff was unable to sustain employment because it was "not
22 consistent with the medical evidence record as a whole."  (AR
23 33.)  The ALJ also gave little weight to Duenez's opinion because
24 she was "not familiar with the Social Security Administration's
25 precise disability guidelines" and "the finding of disabled is
26 one reserved for the Commissioner."  (Id.)
27     On February 27, 2013, Ann Hedges, a registered nurse and
28 assessor for the Los Angeles County Department of Mental Health,

completed a "Summary of Findings" in response to Plaintiff's record-retrieval request. (AR 385-87.) A footnote indicated that the report was "a summary of treatment records that have been retrieved from one or more mental health providers who have provided mental health treatment to the SSI applicant." (AR 387.) It also stated that the "author of this summary is not a treating provider." (Id.) Based on a review of Plaintiff's records, Hedges opined that because of severe anxiety and "other functional limitations, ie. insomnia, difficulty being in public places, isolation, nervousness/shakes, feelings of people watching/staring and judging her, heart palpitations, decreased memory and concentration, and her OCD symptom of over-cleaning," Plaintiff would "not be able to sustain employment as she lacks the ability to function around others, follow instructions, and perform detailed and complex tasks." (Id.) At the end of the report, however, Hedges marked an option entitled "Supportive but lacks adequate clinical documentation." (Id.)

The ALJ gave "little" weight to Hedges's opinion because it was "not consistent with the medical evidence record as a whole," noting Hedges's acknowledgment that her opinion lacked adequate clinical documentation. (AR 33.) He noted that "[m]uch of the medical evidence record . . . indicates [Plaintiff] is able to function around others, follow instructions, and perform detailed and complex tasks." (Id.) The ALJ also gave little weight to the opinion because Hedges was "not familiar with the Social Security Administration's precise disability guidelines." (Id.)

### 3. <u>Analysis</u>

As an initial matter, Plaintiff fails to establish that the ALJ had a duty to develop the record further by ordering a psychiatric consultative examination or having a psychiatrist or psychologist testify at the hearing. It is true that an ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." <u>Garcia v. Comm'r of Soc. Sec.</u>, 768 F.3d 925, 930 (9th Cir. 2014) (citation omitted); <u>see also</u> <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence."). But it nonetheless remains Plaintiff's burden to produce evidence in support of her disability claim. See <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001) (as amended). Moreover, the "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." <u>McLeod v. Astrue</u>, 640 F.3d 881, 885 (9th Cir. 2010) (as amended May 19, 2011) (citation omitted); <u>accord</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001). An ALJ has broad discretion in determining whether to order a consultative examination and may do so when "ambiguity or insufficiency in the evidence . . . must be resolved." <u>Reed v. Massanari</u>, 270 F.3d 838, 842 (9th Cir. 2001) (citation omitted); § 416.919a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim.").

1    Plaintiff claims that the record "is ambiguous as to the
2 severity of her mental limitations" because "physicians of
3 record" were unable to determine whether the cause of her
4 shortness of breath was COPD or anxiety. (J. Stip. at 10.) In
5 support, she cites only an October 3, 2013 treatment note from a
6 pharmacist. (Id.; see AR 574.) But such evidence fails to show
7 that the record was inadequate to properly evaluate Plaintiff's
8 mental limitations, especially given that on July 23, 2012,
9 examining psychiatrist Shahin Khashayar diagnosed social phobia
10 and ruled out OCD and substance dependence. (AR 272.) Dr.
11 Khashayar's notes indicated that Plaintiff's concentration was
12 "fine" and calculation was "fair." (Id.) Further, Plaintiff
13 reported that Xanax "control[led] her symptoms of social phobia
14 very well without having any side effects" (AR 270), refused
15 changes to her treatment regimen (AR 273), and told Dr. Khashayar
16 she would continue seeing her primary-care physician for
17 treatment (id.; see also AR 501 (on Sept. 5, 2013, Plaintiff
18 reporting that Xanax "has helped her reduce anxiety and function
19 as a cleaning lady for a while")).

20    Indeed, aside from anxiety, Plaintiff exhibited normal
21 psychiatric functioning throughout the record. (See, e.g., AR
22 331 (normal insight and judgment on Sept. 25, 2012), 439 (stable
23 on Dec. 18, 2012), 464 (normal insight and judgment on May 9,
24 2013), 447 (stable on July 17, 2013), 504 (unimpaired
25 intellectual functioning and minimal impairment of judgment and
26 insight on Sept. 5, 2013).) Thus, the record was not ambiguous
27 or inadequate; rather, as the ALJ noted, the record generally
28 showed "conservative, routine treatment with medications" and

"many normal psychiatric findings" but also demonstrated "issues . . . with social functioning." (AR 32.)  Thus, the ALJ had no duty to develop the record further.  See Meltzer v. Colvin, No. CV 13-6164 AGR, 2014 WL 2197781, at *4 (C.D. Cal. May 27, 2014) (finding that ALJ did not violate duty to develop record in not ordering psychiatric consultative examination because record was neither ambiguous nor inadequate and showed that claimant's schizophrenia was stable and well controlled by medication); Walsh v. Astrue, No. EDCV 11-170 AGR, 2012 WL 425331, at *4 n.5 (C.D. Cal. Feb. 10, 2012) (finding that ALJ did not violate duty to develop record in not ordering psychiatric consultative examination or medical-expert testimony because record was neither ambiguous nor inadequate and ALJ thoroughly discussed "plethora" of mental-health records).

Plaintiff challenges the ALJ's evaluation of medical evidence regarding only her mental limitations, not her physical impairments.  (See J. Stip. at 11 (citing AR 33 and quoting portion of ALJ's decision evaluating medical evidence of mental impairments).)  Further, she appears to challenge only the ALJ's assessment of Duenez's June 4, 2012 opinion and Hedges's February 27, 2013 opinion, given that she discusses the ALJ's rejection of opinions from "other sources" and whether his reasons for doing so were "germane."  (See id. at 9, 11.)  As Plaintiff appears to concede (id. at 10 (arguing that "the record does not contain acceptable medical source opinion evidence from a psychiatric standpoint")), Duenez and Hedges were indeed nonacceptable medical sources, see SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("licensed clinical social workers" are not acceptable

15

medical source); see also § 416.913(d) ("nurse-practitioners" and "social welfare agency personnel" are "other sources"). Thus, the ALJ needed to give only germane reasons for rejecting their opinions, see Molina, 674 F.3d at 1111, which he did.

As an initial matter, Duenez's statement that Plaintiff was unable to sustain employment was not a conclusion in itself but rather one of several reasons she gave for concluding that Plaintiff should be referred to a psychiatrist. (See AR 407 (concluding that mental-health services were medically necessary, "as evidenced by social withdrawal and isolation, homelessness and the inability to sustain employment due to symptoms").) Moreover, when read in context, the statement likely referred to Plaintiff's inability to continue working as a house cleaner, not an inability to work in any job. In any event, the ALJ properly accorded little weight to the statement because Duenez was "not familiar with the Social Security Administration's precise disability guidelines" and because "the finding of disabled is one reserved for the Commissioner." (AR 33); see § 416.927(c)(6) (in determining weight to give medical opinions, ALJ considers "amount of understanding of [Social Security Administration's] disability programs and their evidentiary requirements that an acceptable medical source has"); § 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); cf. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996) (treating-source opinions that person is disabled or unable to work "can never be entitled to controlling weight or given special significance").

The ALJ also properly gave little weight to Duenez's

findings because they were "not consistent with the medical evidence record as a whole." (AR 33); see § 416.927(c)(4) (more weight given "the more consistent an opinion is with the record as a whole"). As discussed, although the record showed that Plaintiff had issues with social functioning, it also showed that she was stable and that her concentration, intellectual functioning, insight, and judgment were unimpaired or not significantly impaired. (See, e.g., AR 272, 331, 439, 447, 464, 504.) Accordingly, the ALJ included limitations on contact with coworkers and the public in his RFC determination. (AR 27.) But any indication in Duenez's findings that Plaintiff could not work in any job was inconsistent with the record, especially given that Plaintiff testified that she stopped working in her house-cleaner job because of breathing problems, not anxiety. (AR 75; see also AR 386 (Hedges noting that Plaintiff "stopped working 2 years ago due to COPD").) Thus, the ALJ permissibly discounted Duenez's findings. See Fentress v. Colvin, No. 3:13-cv-05078-KLS, 2014 WL 1116780, at *4 (W.D. Wash. Mar. 20, 2014) (finding that inconsistency with record as whole was germane reason for rejecting opinion of licensed clinical social worker); cf. Bayliss, 427 F.3d at 1218 ("[i]nconsistency with medical evidence" is germane reason for discounting lay opinion); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The ALJ properly gave little weight to Hedges's February 27, 2013 opinion for the same reasons he discounted Duenez's

17

findings.  As he noted (AR 33), Hedges herself acknowledged that her findings "lack[ed] adequate clinical documentation" (AR 387). See Jordan v. Colvin, 603 F. App'x 611, 611 (9th Cir. 2015) (finding that nurse practitioners' opinions' substantial departure from other medical evidence in record was germane reason for rejecting them); Fentress, 2014 WL 1116780, at *4 (ALJ properly rejected opinion of nonacceptable medical sources because record contained "little if any objective clinical support for the level of functional restriction they assessed"). And as discussed above, other parts of the record showed mostly normal psychiatric and psychological findings.  Accordingly, Hedges's opinion was inconsistent with the record, which was a germane reason for discounting it.  See § 416.927(c)(4); cf. Bayliss, 427 F.3d at 1218; Thomas, 278 F.3d at 957.  That Hedges was not familiar with the SSA's "precise disability guidelines" (AR 33) was also a germane reason for rejecting her opinion that Plaintiff "will not be able to sustain employment" (AR 387), see § 416.927(c)(6).

Plaintiff argues that accepting as germane the ALJ's reasoning that the nonacceptable medical sources were not familiar with the SSA's precise disability guidelines "would render all opinion evidence from non-Social Security contractors/employees moot, since logically none of them would be familiar with the precise definition of disability."  (J. Stip. at 11.)  But her assumption is not necessarily true; some nonacceptable medical sources may well be familiar with the SSA's guidelines.  The extent to which Hedges and Duenez opined that Plaintiff was unable to do any work was a basis for finding that

they were not familiar with all of the SSA's requirements for determining disability.  And in any event, as discussed, their findings were inconsistent with the record and were thus properly rejected for that germane reason as well.

Plaintiff is not entitled to remand on this ground.

**VI.  CONCLUSION**

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 6, 2015

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[4] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."